IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:12-cv-495 |
|  | : |  |
|  | : | Chief Judge Susan J. Dlott |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : | ORDER GRANTING DEFENDANT'S |
| JEANNINE B. LAMBERT, et al., | : | MOTION TO AMEND ADMISSIONS |
|  | : | AND DENYING PLAINTIFF'S |
| Defendants. | : | MOTION FOR PARTIAL SUMMARY |
|  | : | JUDGMENT |

Plaintiff United States of America brought this action against Defendant Jeannine B.

Lambert, claiming that Mrs. Lambert is liable for tax penalties assessed against her under 26

U.S.C. § 6672.[1]   Plaintiff seeks a judgment of liability, as well as enforcement of associated

federal tax liens through the judicial sale of several tracts of land which Mrs. Lambert and her

husband transferred into a trust for their sons, Steven and Randall Lambert.   This matter is before

the Court on Defendant's Motion to Amend/Correct Response to Request for Admissions (Doc.

34) and Plaintiff's Motion for Partial Summary Judgment (Doc. 35).   For the following reasons,

Defendant's motion (Doc. 34) is GRANTED and Plaintiff's motion (Doc. 35) is DENIED.

## I.     BACKGROUND

Defendant Jeannine B. Lambert's husband, Donald R. Lambert, opened "Lambert's"

grocery store in the early 1970's.   (Lambert Dep. 10–11, Doc. 36-1 at PageID 222.)   Lambert's

was located in Aid, Ohio for three years before it moved to Heckla, Ohio, where the store operated

until 2007.   (*Id.* at 14–15, PageID 223.)   Although the exact date of incorporation is unknown,

---

[1] As discussed below, 26 U.S.C. § 6672 provides that any person who had a duty to collect and pay over corporate payroll taxes withheld from the wages of employees shall be liable for a penalty equal to the amount of taxes the person willfully failed to pay over to the government.

Lambert's became incorporated under the name "L&L, Inc." in the 1990's, with the initials referring to Mrs. Lambert's husband and son, Donald Lambert and Kevin Lambert.  (*Id.* at 11, 16–17, PageID 222–23.)   Donald Lambert was the primary operator of the store before Kevin Lambert succeeded him in the 1990's.   Kevin was the primary operator until the Lamberts made a family decision to close the store in 2007.  (*Id.* at 22–23, 76–77, PageID 225, 238.)

Mrs. Lambert worked at L&L part-time, though she was not paid any wages.  (*Id.* at 21, PageID 224.)   Although she was never paid back, Mrs. Lambert contributed approximately sixty-thousand dollars of her personal funds to the grocery store in the late 1990's.  (*Id.* at 31–32, PageID 226–27.)   Mrs. Lambert considered the grocery store to be a family business that she was helping out with (*id.*), stating that she "[j]ust helped here and there, like in the meat or the produce, or things like that."  (*Id.* at 12, PageID 222.)   Her primary responsibility at the store was to operate the deli and assist with the meat department, although she would "help with some paperwork in the office and write some checks for vendors" on occasion.  (Def. Lambert's Ans. to Pl.'s Interrog. 3, Doc. 36-2 at PageID 256.)   When asked to describe her responsibilities at the store, Mrs. Lambert described them as follows:

> I had children at home and I didn't—I didn't work at the store.   I just went on days that I could or I wanted to and helped, or days that I felt like I was needed.   And I did anything there was to do, really.   I have stocked and I helped him get different—the meat department or the produce department.
>
> . . .
>
> As time went on, the children were grown.   And I went to the store. . . . I would do just about like I said I did. . . . [I]f Kevin was gone to run errands or whatever, after he started working in the store, then I would . . . help him out . . . .   Even I—I still worked back in the store, in the deli at that time.   After later years we had a deli. And I helped worked there.  . . . I would . . . go . . . up to the office there, right before we got out of the store, and helped out enough, answered the phone and do things like that.   But as far as just really being the business lady, I didn't do that. But I could go ahead and help out and do it if I had to.

2

(Lambert Dep. 20–21, Doc. 36-1 at PageID 224.)   Mrs. Lambert held the title of secretary at L&L at some point during the store's operation; however, she did not recall who decided she was the secretary or when she held that title.   With regard to the duties associated with the title, she stated that she "never did anything.   I was never there."   (*Id.* at 25, PageID 225.)

According to Mrs. Lambert, her son Kevin primarily handled the financial affairs of the grocery store, although she testified that she could sign checks for the company, pay company utilities and suppliers, and had authority to make purchases on behalf of L&L.   (*Id.* at 35–36, 39, PageID 228–29; Def. Lambert's Resp. to Pl's Req. for Admis. No. 3–4, Doc. 36-4 at PageID 268.) Mrs. Lambert also indicated that she was able to hire and fire employees and make deposits and withdrawals of company money at the bank.   (Lambert Dep. 27, 49, Doc. 36-1 at PageID 226, 231.)   However, Mrs. Lambert testified that performance of those tasks was not part of her job and was required of her infrequently.   (*Id.* at 34–35, PageID 228.)

L&L eventually ran out of money and could no longer do business.   (*Id.* at 65, PageID 235.)   According to Mrs. Lambert, the Lamberts made a family decision to cease operations in June of 2007.   Although Mrs. Lambert could not say who bought the company or for what price, she indicated that the proceeds of the sale were used to pay some of L&L's outstanding debts.   (*Id.* at 65–67, PageID 235–36.)   Mrs. Lambert testified that she knew that L&L was required to pay payroll taxes during L&L's operation, but that she did not take care of payroll or tax returns and never made the decision to pay other creditors over the taxes.   (*Id.* at 41–42, 53, 68, PageID 229–30, 232, 236.)   With regard to the payroll taxes, Mrs. Lambert testified that "Kevin was saying that he was going to get them caught up.   And . . . that's the way it was.   But that was something that Kevin took care of.   He did the banking and took care of that."   (*Id.* at 41–42, PageID 229–

30.)   Nevertheless, the taxes were not paid.

A delegate of the Secretary of the Treasury subsequently made various assessments of recovery penalties against Mrs. Lambert, pursuant to 26 U.S.C. § 6672, in the amount of $202,928.65.   (Decl. of George Ioannidis 1–2, Doc. 36-5 at PageID 272–73.)   The Government filed the instant action seeking a judgment that Mrs. Lambert is liable for the recovery penalties. According to Plaintiff, Mrs. Lambert willfully failed to make payroll tax payments for L&L, Inc. during quarterly periods between 1998 and 2003.   (Doc. 2.)   Plaintiff also seeks enforcement of the associated federal tax liens against ten tracts of land in Lawrence County, Ohio, record title to which Mrs. Lambert and her husband transferred into a trust in 2007.[2]   (*Id.* at 4–9; PageID 47– 52.)   Plaintiff indicates that it did not pursue this action against Kevin Lambert, who determined the pay of employees, took care of banking and tax matters for the business, and was the major point of contact between the store and suppliers, because he is believed to be judgment proof. (Doc. 36, p. 14, n. 6, PageID 212; Lambert Dep. 2728, 41–42, 45–46, 48–49, PageID 226, 229– 31.)

## II.    MOTION TO AMEND ADMISSIONS

On July 3, 2013, Plaintiff served requests for admissions, interrogatories, and document requests on Mrs. Lambert through her counsel.   (Pl.'s Req. for Admis. to Def. Jeannine B. Lambert 2–5, Doc. 37-1 at PageID 303–307.)   The request advised Mrs. Lambert that, pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure, the matters included in the request for admissions would be deemed admitted unless Mrs. Lambert served a written answer or objection

---

[2]   Plaintiff moved for partial summary judgment because Plaintiff only seeks enforcement of the federal liens with respect to six of ten tracts of land transferred to the trust.   (*See* Doc. 35, p. 3, PageID 198.)   Because the Court determines that genuine issues of material fact preclude granting Plaintiff's motion for partial summary judgment, the Court declines to reach the issue of enforcement of the federal tax liens.

4

on Plaintiff's counsel within thirty days.   (*Id.* at 2, PageID 303.)

On August 21, 2013, after Mrs. Lambert failed to timely respond to the request, counsel for Plaintiff notified Mrs. Lambert's counsel that the admissions were deemed admitted pursuant to Rule 36(a)(3) and that any attempt to withdraw the admissions must be made by motion.   (Letter of Aug. 21, 2013, Doc. 37-2 at PageID 331–32.)   The correspondence also demanded responses to the interrogatories and document requests.   (*Id.*)   Mrs. Lambert, through counsel, served upon Plaintiff responses to the discovery requests on September 3, 2013, including responses to the requests for admissions.   Ten days later, on September 13, 2013, Plaintiff took Mrs. Lambert's deposition.

Mrs. Lambert filed a Motion to Amend Admissions on September 17, 2013.   (Doc. 34.) In the motion, Defendant moves the Court to permit the amendment of the prior answers that were deemed admitted pursuant to Rule 36(a)(3).   According to Defendant, Plaintiff will not be prejudiced by the amended admissions because the responses were provided to Plaintiff prior to Mrs. Lambert's deposition.   Defendant further contends that the extensive discovery requests and Mrs. Lambert's lack of knowledge of much of the subject matter made it "difficult to obtain and finalize responses to discovery."   (*Id.* at 2, PageID 193.)

Plaintiff opposes the motion.   (Doc. 37.)   First, Plaintiff argues that amendment would not promote presentation of the merits of the case.   Plaintiff indicates that its Motion for Partial Summary Judgment does not rely on the deemed admissions.   As such, Plaintiff contends that "[a]ssuming that the Court agrees that the motion for partial summary judgment should be granted, then Mrs. Lambert's effort to withdraw her deemed admissions is irrelevant to the outcome of that motion and will not promote the presentation of the merits of the case."   (*Id.* at 5, PageID 296.) Second, Plaintiff argues that it may be prejudiced if the admissions are amended.   Although

Plaintiff was in possession of Mrs. Lambert's responses prior to the deposition, Plaintiff notes that Mrs. Lambert did not *file* the Motion to Amend Admissions until after her deposition. Plaintiff claims that "[c]ounsel for the United States might have questioned her differently at her deposition if the motion had been filed beforehand." (*Id.* at 5, PageID 296.) Finally, Plaintiff claims that Defendant has not shown good cause for the delay and does not have a strong case on the merits.

### A. Standards Governing Motions to Amend Admissions

A matter in a request for admissions "is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). FRCP 36(b) permits the withdrawal or amendment of admissions "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

"A district court has considerable discretion over whether to permit withdrawal or amendment of admissions." *Kerry Steel, Inc. v. Paragon Industries, Inc.,* 106 F.3d 147, 154 (6th Cir. 1997) (internal quotation marks and citation omitted). The first prong of the test—whether permitting an amendment would promote the presentation of the merits of the action—is satisfied "when upholding the admission would practically eliminate any presentation on the merits of the case." *Clark v. Johnston*, 413 F. App'x 804, 818 (6th Cir. 2011) (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). With regard to the prejudice inquiry in the second prong, "the prejudice contemplated . . . is not simply that the party who initially obtained the admission will now have to convince the factfinder of its truth, . . . [but] rather, relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Id.* (quoting *Kerry Steel, Inc. v. Paragon Indus.,* 106 F.3d 147, 154 (6th Cir. 1997)

6

(internal quotation marks omitted)).

### B. Analysis

Applying the applicable standards to the instant case, the Court finds Defendant's motion well-taken.   Upholding the admissions in this case would practically eliminate any presentation on the merits of the case.   *Johnston*, 413 F. App'x at 818.   The first requested admission, for example, asked that Defendant admit that she is "liable for trust fund recovery penalties, pursuant to 26 U.S.C. § 6672," the ultimate issue in this case.   (*See* Pl.'s Req. for Admis. 2, Doc. 37-1 at Page ID 304.)   Furthermore, the Court finds Plaintiff's argument that it "may be prejudiced" (Doc. 37, p. 5, PageID 296) if the Court does not grant its partial summary judgment motion insufficient to justify denying Defendant's motion.   Plaintiff claims that "if the Court denies summary judgment as to liability, finding a triable issue of fact, then the United States' inability to rely on the deemed admissions could prove prejudicial, especially given the total absence of company records, the paucity of other potential witnesses with knowledge of the corporation's activities, and the lack of any opportunity for follow-up discovery."   (*Id.* at p. 5, PageID 297.) However, as noted above, the prejudice contemplated under Rule 36(b) "is not simply that the party who initially obtained the admission will now have to convince the fact finder of the truth." *Johnston*, 413 F. App'x at 818.   Finally, although Plaintiff claims that counsel would have asked Mrs. Lambert different questions had she timely responded to the admissions request, Plaintiff was in possession of Mrs. Lambert's untimely responses to the admissions prior to her deposition and Plaintiff has not specified how the deposition would have been handled differently or what additional discovery Plaintiff requires from Defendant based upon the untimely response.[3]

---

[3]   Plaintiff questioned Mrs. Lambert at length concerning the content of the admissions.   (*See*, Lambert Dep., Doc. 36-1, Page ID 219.)   If Plaintiff identifies additional discovery required as a result of granting Defendant's motion, it

Accordingly, for the reasons state above, Defendant's Motion to Amend Admissions (Doc. 34) is GRANTED.

### III. MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment on its claim that Defendant is liable for trust fund recovery penalties under 26 U.S.C. § 6672. (Doc. 35.)

### A. Standards Governing Motions for Summary Judgment

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

can request leave to conduct additional discovery.

one-sided that one party must prevail as a matter of law." *Id*. at 251–52. But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id*. at 247–48. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. at 252.

### B. 26 U.S.C. § 2267

The Internal Revenue Code requires that employers deduct and withhold income and social security taxes from wages paid to its employees. 26 U.S.C. § 3102(a). The taxes withheld from employees, "shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501(a). "These 'trust fund taxes' are for the exclusive use of the Government and are not to be used to pay the employer's business expenses, including salaries, or for any other purpose." *McGlothin v. United States*, 720 F.2d 6, 8 (6th Cir. 1983). However, "[b]ecause the Code requires the employer to collect taxes as wages are paid, § 3102(a), while requiring payment of such taxes only quarterly, the funds accumulated during the quarter can be a tempting source of ready cash to a failing corporation beleaguered by creditors." *Slodov v. United States*, 4346 U.S. 238, 243 (1978).

Under § 6672, "[a]ny person required to collect, truthfully account for and pay over such tax, . . . shall, . . . be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672. "[A]n individual is liable under §6672(a) if he or she: 1) is responsible for paying the taxes and 2) willfully fails to turn over the tax money to the government." *Bell v. United States*, 355 F.3d 387, 393 (6th Cir. 2004). To determine whether a person is "responsible," the Court focuses on "the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors." *Gephart v. United States*, 818 F.2d 469, 473

9

(6th Cir. 1987).  Although there are many factors that "alone or in combination with others could

be enough in certain circumstances to warrant [an individual] being found a responsible person as

a matter of law, *Luce v. Luce*, 119 F. Supp. 2d 779, 783 (S.D. Ohio 2000), the Sixth Circuit has

identified the following five factors as being indicative of responsibility:

1)   the duties of the officer as outlined by the corporate by-laws;

2)   the ability of the individual to sign checks of the corporation;

3)   the identity of the officers, directors, and shareholders of the corporation;

4)   the identity of the individuals who hired and fired employees;

5)   the identity of the individuals of who are in control of the financial affairs of the
     corporation.

*Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir. 1993).  More than one individual may be a

responsible person, although "[g]enerally such a person is one with ultimate authority over

expenditure of funds since such a person can fairly be said to be responsible for the corporation's

failure to pay over its taxes."  *Gephart*, 818 F. 2d at 473 (internal citation and quotation marks

omitted).  "[L]iability is predicated upon the existence of significant, as opposed to absolute,

control of the corporation's finances."  *Id.*  "For a responsible person to be deemed willful, he or

she must have either 'deliberately or recklessly disregarded facts and known risks that the taxes

were not being paid, or 'had knowledge of the tax delinquency and knowingly failed to rectify it

when there were available funds to pay the government.'"  *Byrne v. United States*, 498 F. App'x

555, 561 (6th Cir. 2012) (quoting *Calderone v. United States*, 799 F.2d 254, 260 (6th Cir. 1986);

*Gephart*, 818 F.2d at 475).

### C. Analysis

Plaintiff contends that the facts presented in this case establish Mrs. Lambert's responsibility as a matter of law. According to Plaintiff, there is no dispute regarding how L&L operated or Mrs. Lambert's role at the store during the relevant time period. Plaintiff points to the fact that Mrs. Lambert had check signing authority and the ability to hire and fire employees at L&L, under the second and fourth *Gephart* factors. In addition, under the fifth factor, Plaintiff argues that under the totality of the circumstances Mrs. Lambert had significant control over L&L's financial affairs.

Defendant counters with the contention that material questions of fact remain with regard to Mrs. Lambert's responsibility under § 6672. Defendant acknowledges that she had check signing capabilities and could hire and fire employees, however she notes that she did so infrequently and neither activity was a routine part of her role at L&L. Mrs. Lambert also contests Plaintiff's claim that she managed L&L's day-to-day business, arguing that she "did not decide how much the employees would be paid, she did not make the decision on whether to give an employee a raise, she did not have any involvement in paying the bills of the company, she did not decide the retail prices in the store, and she did not ever review or sign any loan documents on behalf of L&L." (Doc. 40 at 8–9, PageID 343–44.) Mrs. Lambert further contends that a factual issue remains with regard to whether she influenced significant financial decisions at L&L.

Upon careful review of the record, the Court finds that genuine issues of material fact exist with regard to whether Mrs. Lambert is a responsible person under Section 2267. Specifically, under the fifth *Gephart* factor, the parties dispute Mrs. Lambert's role in the day-to-day operations of the store, the degree of her control over the company finances, and the extent to which she

influenced significant business decisions. "In the context of a section 6672(a) dispute . . . summary judgment is appropriate where there are no genuine questions as to the assessed individual's control of company funds and decision making authority." *Winter v. United States*, 196 F.3d 339, 346 (2d Cir. 1999). Viewing the record in the light most favorable to the Defendant, a jury could reasonably find that Mrs. Lambert did not have sufficient control over L&L's finances or the decision-making process regarding the payment of creditors to be found to be a responsible party under § 6672.

Consideration of the remaining *Gephart* factors fails to alter this finding. As both parties acknowledge, the first factor is immaterial in this matter. L&L did not have corporate by laws and any corporate records were destroyed by water damage. (Doc. 36, pp. 12–13, PageID 210–11; Doc. 43, p. 4, PageID 359.) The third factor—the identity of the officers, directors, and shareholders of the corporation— is of limited value as well. Mrs. Lambert testified that she may have once held the title of secretary, though she does not recall when she held the title or the duties associated with it. (Lambert Dep. 25, Doc. 36-1 at PageID 225.) As argued by Plaintiff, under the second and fourth *Gephart* factors, Mrs. Lambert's check signing and hiring and firing authority provide some indication that she is a responsible party. However, although these are factors to be considered in determining liability under Section 6672, the Sixth Circuit has noted that "the relevant inquiry is not simply whether the individual performed the ministerial function of signing a check but, rather, the individual's control over the decision-making process through which allocations to creditors are made." *Cline v. United States*, No. 91-2370, 1993 WL 272516 at *4 (6th Cir. July 21, 1993) (quoting *Godfrey v. United States*, 748 F.2d 1568, 1575 (Fed. Cir. 1984)). Based on the record before the Court, it remains equivocal whether Mrs. Lambert had significant control over the finances of L&L or influence on the decision-making process by which

12

creditors were paid.

Because the current record fails to conclusively settle, as a matter of law, whether Defendant Mrs. Lambert is properly viewed as a responsible person during the tax quarters at issue, Plaintiff's Motion for Partial Summary Judgment (Doc. 35) is DENIED.

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion to Amend/Correct Response to Request for Admissions (Doc. 34.) is hereby **GRANTED**.   Plaintiff's Motion for Partial Summary Judgment (Doc. 35.) is **DENIED**.

IT IS SO ORDERED.


Date: <u>July 21, 2014</u>                                          <u>S/Susan J. Dlott</u>
                                                                              Chief Judge Susan J. Dlott
                                                                              United States District Court

13